**NOT FOR PUBLICATION** **CLOSED**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PATRICIA CASTRO | : | Civil Action No. 05-CV-3224 (FSH) |
| Plaintiff, | : | |
| | : | **OPINION** |
| vs. | : | |
| | : | |
| JO ANNE B. BARNHART | : | April 27, 2007 |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| Defendant. | : | |

**HOCHBERG, District Judge:**

This matter is opened before the Court upon Plaintiff's motion to review a final determination of the Commissioner of Health and Human Services ("Commissioner"), pursuant to Section 405(g) of the Social Security Act ("Act"), as amended. 42 U.S.C.A. § 405(g). This motion has been reviewed and decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.      Background.**

Plaintiff alleges that she was working as a nurse's aide when she became disabled following an accident on August 10, 2001. Plaintiff's main complaints are herniated discs at C3-4, C4-5, and C5-6; a herniated disc at L5-S1 with a bulging disc at L4-5; loss of range of motion in both shoulders; and depression. On August 8, 2002, Plaintiff filed an application for disability insurance benefits ("DIB"). Plaintiff's claim for DIB benefits was denied both on initial application and on reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). On December 16, 2004, Plaintiff appeared before ALJ

Christopher P. Lee.  In a decision dated January 31, 2005, Judge Lee ruled that Plaintiff did not suffer from a "disability" as defined by the Act.  Plaintiff's appeal was denied by the Appeals Council on April 25, 2005.

The ALJ considered a review of the medical evidence on record by Dr. Joseph Micale[1], a state agency physician, in October 2002.[2]  Dr. Micale determined that Plaintiff could perform light work with occasional climbing or crawling and no balancing.  (Tr. 222).  He also determined that Plaintiff could lift and/or carry up to 20 pounds and should avoid concentrated exposure to hazards.  (Tr. 221, 224).

The ALJ also considered the medical evidence from a September 2001 examination by Dr. Ken Cubelli, an orthopaedist.  (Tr. 217).  Dr. Cubelli found that Plaintiff had good range of motion of the upper extremities, good neurovascular status, and was capable of standing and walking.  (Tr. 213, 217).  Results of an October 2001 MRI showed moderate disc protrusion, but Dr. Cubelli did not see any severe herniation that warranted surgical intervention.  (Tr. 131, 215).  Dr. Cubelli continually recommended physiotherapy to Plaintiff.  (Tr. 213-15).

The ALJ further considered the December 2001 and January 2002 examinations of Plaintiff by Dr. Richard S. Nachwalter, a spinal surgeon.  (Tr. 187-93).  Dr. Nachwalter found Plaintiff had full motor strength and normal reflexes in her extremities.  (Tr. 187, 192).  Although capable of touching her chin to her chest bone, Plaintiff was limited in the extension

---

[1] Defendant's brief mistakenly identifies Dr. Joseph Micale as Dr. Michael Joseph.  Reference to page 228 of the trial record shows the clear signature and naming of Dr. Joseph Micale.

[2] State agency medical consultants and other program physicians are qualified experts in the field of Social Security disability, and an ALJ is entitled to rely upon their opinion in issuing decisions. 20 C.F.R. §§ 404.1512(b)(6) and 416.912(b)(6).

and rotation of her neck. (Tr. 192). Dr. Nachwalter recommended spinal surgery to decompress the spinal cord at C5 to prevent the worsening of her condition. (Tr. 187). At this time, Plaintiff was unable to work. (Tr. 187, 190).

Plaintiff had surgery in February 2002, (Tr. 143-46), and she reported significant improvement in her upper and lower extremities. (Tr. 186). A post-operative examination on April 11, 2002 showed continuing improvement with only short-lived pain in her arm several times a week. (Tr. 184). In June 2002, Plaintiff complained of pain in her lower back and lower extremities. (Tr. 180). Although examination of another MRI showed a small central disc bulge, Dr. Nachwalter found it difficult to explain her pain from the imaging results. (Tr. 129-30, 180). Dr. Nachwalter explained to Plaintiff that she would need to return to work, (Tr. 181), and declared Plaintiff cleared to do so as of July 1, 2002, with a 35-pound lifting restriction. (Tr. 178).

In an examination report on July 29, 2002, Plaintiff, by her own admission, stated that she had significantly improved since the operation. (Tr. 176). As Plaintiff still complained of occasional pain, Dr. Nachwalter enrolled Plaintiff in a work hardening program. (Tr. 176). Plaintiff remained out of work because light work was not made available to her, but she was scheduled to return to work upon completion of the work hardening program. (Tr. 176). Despite her continued complaints of occasional pain, Dr. Nachwalter opined that many of them would dissipate over time. (Tr. 175). Plaintiff finally returned to work on or around August 20, 2002, (Tr. 175), but claims to have worked only one day before she was unable to proceed due to pain. (Tr. 249). Plaintiff has, thus, not been "engaged in substantial gainful activity" since the date of her accident. (Tr. 12).

At the request of her attorney, Plaintiff was examined by Dr. Theodora Maio, a general surgeon, in May 2003. (Tr. 249-54). Plaintiff reported to Dr. Maio that she had returned to work for one day following the treatment, and then had to make a trip to the emergency room due to the pain; Plaintiff submitted no records to support this claim. (Tr. 249). Dr. Maio concluded that Plaintiff was one-hundred percent disabled based on her orthopaedic condition. (Tr. 253). Plaintiff's attorney further requested the examination of Plaintiff by Dr. Bruce Johnson, a psychiatrist and neurologist. (Tr. 255-59). Dr. Johnson concluded an estimated fifty percent neurologic impairment and an estimated thirty percent psychiatric impairment. (Tr. 255-59).

In July 2003, Dr. Nachwalter performed a second surgery to correct pseudoarthrotis of Plaintiff's C5-C6 vertebrae. (Tr. 287-89).

In April 2004, Plaintiff received treatment from Dr. Joseph P. Valenza, a pain management specialist. (Tr. 235-36). Dr. Valenza prescribed Percocet and a Lidoderm patch to ease Plaintiff's pain, which reduced from an "eight" to a "four" on a scale of one to ten. (Tr. 238). Dr. Valenza subsequently changed Plaintiff's medicine from Lidoderm patch to a Duragesic patch. (Tr. 238-39). These medications reduced her pain by fifty-percent, to a "three" or "four." (Tr. 239). After a therapy session, however, Plaintiff notes that her pain could register as high as a "nine." (Tr. 239).

During visits in May and June 2004, Plaintiff and her therapist both stated that she was becoming more functional in therapy, and her pain had gone down to a "four" on a scale of one to ten. (Tr. 241). Dr. Valenza attempted to decrease the amount of the Duragesic patch from 50 mcg to 25 mcg, resulting in the Plaintiff's pain level rising to a "seven" on a scale of one to ten. (Tr. 243). In September 2004, Plaintiff began to apply two 25 mcg Duragesic patches throughout

4

the day in addition to the prescribed Percocet, resulting in a decrease in pain to a "two" or "three" on a scale of one to ten, and she was described by Dr. Valenza as "very functional." (Tr. 246). On examinations in October and November 2004, Plaintiff's condition was unchanged. (Tr. 246-48). Plaintiff reported that with the Duragesic patch her pain was a "two" or "three," while without the patch her pain was a "fifteen" on a scale of one to ten. (Tr. 247-48).

**II.     Standard of Review for Disability Benefits.**

This Court reviews the determination of the Commissioner to assess whether there is substantial evidence supporting the administrative judge's decision. 42 U.S.C. § 405(g); *Consol. Edison Co. Of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (D. Pa., 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court might have reasonably made a different finding based on the record. *See Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

**III.    Standard for Finding of Disability.**

An individual may be entitled to Social Security Benefits upon a finding of disability by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D). An individual will be deemed to be disabled only if the impairment is so severe that she is not only unable to do her previous work but cannot, considering her "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423 (d)(2)(A) and 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

Step One: Substantial Gainful Activity. The Commissioner first considers whether the individual is presently engaged in substantial gainful activity. If so, the individual will be found not disabled without consideration of her medical condition. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

Step Two: Severe Impairment. If there is no substantial gainful activity, an individual must then demonstrate that she suffers from a severe impairment or combination of impairments that significantly limits her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Step Three: Listed Impairment. If an individual demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. Part 404, Subpt. P, or is the equivalent of a Listed Impairment. If the individual has such an impairment, the Commissioner will find the individual disabled.

Step Four: Residual Functional Capacity. If an individual does not have a Listed Impairment, the fourth step is to determine whether, despite her impairment, the individual has

the residual functional capacity to perform her past relevant work. Residual functional capacity is defined as what the claimant can still do despite her limitations. If she does have the capacity to perform past work, the individual will be found not disabled. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

  Step Five: Other Work. Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's residual functional capacity, age, education and past work experience to determine if she is able to perform other work functions. If she cannot do so, the individual will be found disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

  The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof. *Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion through the first four steps; however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the claimant is capable of gainful employment other than her past relevant work, and that jobs which the claimant can perform exist in substantial numbers in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If there is a finding of disability or non-disability at any point during the review, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

**IV.** **Analysis.**

 At Step One, the ALJ determined that the Plaintiff had not performed substantial gainful activity since the onset of her alleged disability on August 10, 2001. At Step Two, the ALJ determined that the medical evidence on record established the existence of a "severe" spinal impairment that imposes limitations on Plaintiff's ability to perform basic work related functions.

20 C.F.R. 404.1508. At Step Three, the ALJ determined that Plaintiff's severe impairments did not meet or equal the criteria set forth in the Listing 1.02 or any other Listed Impairment. At Step Four, in view of her diminished functional capacity, the ALJ found Plaintiff no longer retained the ability to perform her past relevant work, since it required heavy lifting.[3] Thus, at Step Five, the burden shifted to the Commissioner to show that other work existed in significant numbers in the national economy that Plaintiff could perform given her residual functional capacity ("RFC"), age, education, and past work experience.

The ALJ concluded that Plaintiff retained the RFC to engage in light work activity, specifically lifting lighter weights (such as twenty pounds). Furthermore, the ALJ found that Plaintiff had regained the ability to sit, stand, and walk as needed throughout the course of an eight-hour workday. Thus, the ALJ determined that Plaintiff retained the ability to perform a full range of light work, which includes the ability to perform sedentary work. Given Plaintiff's RFC and vocational factors of age, education, and past work experience, the ALJ found that Plaintiff was capable of performing work other than her past relevant work, which existed in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled as directed by Medical-Vocational Rule 202.17, and, thus, not eligible for SSI benefits. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Plaintiff argues that: (1) the ALJ erred in ignoring the weight of the subjective evidence provided by her testimony, and in doing so failed to comply with Social Security Ruling 96-7p concerning the evaluation of Plaintiff's pain, and that (2) the ALJ improperly applied the

---

[3] Plaintiff's past relevant work as a nurse's aide often required her to lift the bodies of her patients.

Medical-Vocational Guidelines by not obtaining the testimony of a vocational expert.

> **A.  The ALJ Sufficiently Explained that Plaintiff's Subjective Complaints of Pain were Inconsistent with the Objective Medical Evidence on Record.**

Plaintiff contends that the ALJ had no factual support for his finding that Plaintiff could engage in some form of substantial gainful activity.  Furthermore, Plaintiff contends that, in accordance with Social Security Ruling 96-7p, the ALJ failed to conduct a proper assessment of Plaintiff's credibility concerning her subjective complaints of pain.  In forming a decision, the ALJ is to consider and weigh all non-medical evidence.  *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 122 (3rd Cir. 2000).  Should the credibility of subjective symptoms, such as pain, be inconsistent with objective medical evidence, the ALJ must explain the dismissal of such complaints.  *Id.*; *see* S.S.R. 96-7p.

The ALJ thoroughly considered Plaintiff's subjective complaints of pain in accordance with 20 C.F.R. § 404.1529 (2007) and Social Security Ruling 96-7p.  The ALJ determined that the complaints "[were] not credible to the incapacitating extent alleged" based on the objective medical findings, Plaintiff's treatment history, the medical opinions of record, and Plaintiff's daily activities.  (Tr. 14-15).  The ALJ's decision is supported by substantial relevant evidence of the type that "a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Pearles*, 401 U.S. 289, 401 (1971).  Upon assessment of the merits, the ALJ found that the evidence supported Plaintiff's claim of a severe impairment; however, he looked to the lack of objective medical evidence to support Plaintiff's subjective complaints of pain in concluding that this impairment did not amount to a disability.  (Tr. 14-15); *see* 20 C.F.R. § 404.1529(c)(2) (2007) ("Objective medical evidence...is a useful indicator to assist [the ALJ] in making

reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, have on [the claimant's] ability to work.").

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [Plaintiff's] statements of symptoms." 20 C.F.R. § 404.1508 (2007); *see Izzo v. Commissioner of Social Sec.*, WL 1749434 (3rd Cir. 2006) (holding claimant's asthma was not a severe impairment due to no medical signs or findings in the record or treating physician diagnosis); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (stating subjective complaints of pain must also be corroborated by objective medical evidence). The ALJ noted that, while Plaintiff clearly had cervical abnormalities requiring surgery in February 2002, (Tr. 143-46), the treatment record from Dr. Richard Nachwalter showed good progress with normal reflexes and motor strength by June 2002. (Tr. 14-15, 180). Contrary to Plaintiff's complaints of pain, treatment notes for July and August 2002 continued to show her symptoms had decreased and that normal sensory, motor, and reflex functions were present on physical examinations. (Tr. 14, 175-76). Further affirming the ALJ's decision, in August 2002, Dr. Nachwalter found Plaintiff was able to return to work. (Tr. 14, 175). As a matter of fact, in July 2002, Dr. Nachwalter reported that the sole reason Plaintiff was out of work at the time was that her previous job did not afford the opportunity of lighter duty. (Tr. 14, 176).

Plaintiff was hospitalized in July 2003 for neck pain, diagnosed as pseudoarthrotis, which was identified as being of recent onset. (Tr. 14). More importantly, the medical record showed that Plaintiff made no specific reference to residuals until this recent onset of neck pain. (Tr. 14-15, 287-89). Plaintiff contends she went back to work for one day before ending up in the

emergency room, but there is no medical evidence to support this contention. (Tr. 249). The ALJ's findings were consistent with those of Dr. Joseph Micale, a state agency consultant, following his review of medical documentation in October 2002. Although Plaintiff was precluded from heavy lifting, she was able to lift lighter weights, such as twenty pounds, inherent in work of light nature. (Tr. 221-24). Furthermore, she was capable of sitting, standing, and walking throughout the course of an eight-hour workday. (Tr. 221-24).

The ALJ gave significant weight and consideration to Plaintiff's subjective complaints of pain. In examining the record in its entirety, he found an abundance of objective medical evidence that was inconsistent with Plaintiff's subjective complaints of pain. The ALJ, thus, sufficiently explained his ultimate dismissal of Plaintiff's subjective complaints in his decision.

### B. The ALJ's Failure to Make a Finding Regarding the Presence of Nonexertional Impairments Renders His Step-Five Analysis Incomplete.

Plaintiff also contends that the ALJ failed to meet the Commissioner's burden of proof for the final step of the inquiry; specifically, Plaintiff alleges that the ALJ did not comply with the Medical-Vocational Guidelines[4] by not obtaining a vocational expert to testify to the availability of jobs in the national economy that Plaintiff could perform given her alleged nonexertional impairments. A limitation is exertional if it affects the claimant's ability to meet various strength demands of jobs in terms of sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 404.1569a. Nonexertional limitations are defined as all other impairments. *Id*. Plaintiff's alleged nonexertional limitations included reduced concentration

---

[4]Medical-Vocational Guidelines, referred to as "the grids," dictate a result of "disabled" or "not disabled" according to a combination of vocational factors, i.e., age, education level, work history, and residual functional capacity.

and memory.

The grids establish, for exertional impairments only, that jobs exist in the national economy that people with those impairments can perform. *Sykes v. Apfel*, 228 F.3d 259, 270 (3d Cir. 2000). The regulations do not purport to establish jobs that exist in the national economy for persons with nonexertional impairments. *Id*. at 269. In the presence of nonexertional limitations, the ALJ cannot rely solely on the guidelines in his determination of non-disability. *Poulos v Commissioner of Social Security*, 2007 WL 163065, at *5. Testimony of a vocational expert or other evidence is required when nonexertional limitations are present. *Sykes*, 228 F.3d at 273-74. Furthermore, "[i]n the absence of evidence in addition to the guidelines, the Commissioner cannot establish that there are jobs in the national economy that someone with the claimant's combination of impairments can perform." *Id*.

In order for an ALJ to make a direct determination of disability without reference to individualized evidence that there are jobs suitable in the national economy that the claimant can perform, there must be a regulation stating that authority. *Id*. at 270. Until the government establishes a regulation that makes available jobs in the national economy for claimants with exertional and nonexertional limitations, the ALJ cannot satisfy his burden under the Act by reference to the grids alone. *Id*. "[I]f the [ALJ] wishes to rely on an SSR as a replacement for a vocational expert, it must be *crystal-clear that the SSR is probative* as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base."[5] *Allen v.*

---

[5]Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35 (b)(1) (2007); *see also Sykes v. Apfel*, 228 F.3d 259, 271 (3d Cir. 2000).

*Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005) (emphasis added).

A nonexertional impairment is defined as a limitation or restriction imposed by an impairment or related symptom that affects the ability to meet the demands of jobs other than the strength demands. 20 C.F.R. § 404.1569a(c). In making an administrative decision on the existence of nonexertional limitations, the ALJ should provide "a clear and satisfactory explication of the basis on which it exists." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "[C]ourts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review...[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943). Should the ALJ find nonexertional limitations exist, Medical-Vocational Grids are to serve only as "framework" to the ALJ's decision, and he must call a vocational expert to show that Plaintiff can perform substantial gainful activity even though she suffers from nonexertional impairment. 20 C.F.R. § 404.1569a(d); *Mac v. Sullivan*, 811 F.Supp. 194, 198-99 (E.D.Pa. 1993).

Here, the ALJ found that Plaintiff was a younger individual (forty-seven years old) with a limited education (ninth grade) and no transferable work skills. (Tr. 15-16). The ALJ agreed that Plaintiff was unable to perform past relevant work, but he concluded that Plaintiff was capable of performing a full range of light work and was thus not disabled pursuant to grid rule 202.17. 20 C.F.R. pt. 404, Subpt. P, App. 2, § 202.17 (2007); (Tr. 16).

However, it is not clear that ALJ made a <u>specific finding</u> that Plaintiff had or did not have nonexertional impairments. The ALJ concluded that Plaintiff "maintain[ed] an adequate level of social functioning as well as her ability to maintain concentration, persistence and pace all appear

13

to remain intact." (Tr. 14). However, the ALJ does not address Plaintiff's alleged nonexertional limitation of memory. In order to rely solely on the grids, as was done here, the ALJ needed to specifically conclude that Plaintiff had no nonexertional impairments. The ALJ's failure to make a finding regarding the presence or absence of Plaintiff's alleged nonexertional impairments renders his Step-Five analysis incomplete.

**V.      Conclusion**.

For the aforementioned reasons, and after careful review of the record in its entirety, the Court affirms in part and remands in part the ALJ's decision to deny Plaintiff's SSI benefits. The ALJ carefully considered the record, including Plaintiff's testimony, and there is substantial evidence in support of the ALJ's decision that Plaintiff's subjective complaints were not credible. However, the ALJ failed to specifically find that Plaintiff did not suffer from any nonexertional impairments, and thus improperly relied on the Medical-Vocational Guidelines in reaching his conclusion. Accordingly, this Court remands this case for further clarification as to the ALJ's findings regarding Plaintiff's alleged nonexertional impairments.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**